Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| CONSEJO DE TITULARES CONDOMINIO PAVILION COURT<br><br>Apelantes<br><br><br>V.<br><br><br>SYLVIA ESTHER SANTIAGO FIGUEROA, CYNTHIA MICHELLE BURGOS LÓPEZ<br><br><br>Apelados | TA2025AP00231 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm. SJ2024CV10523<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente), Ley de Condominios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 13 de enero de 2026.

Comparece ante nos el Consejo de Titulares del Condominio Pavilion Court (en adelante, "Consejo de Titulares" o "parte apelante"), para que revisemos la *Sentencia Parcial* emitida y notificada el 25 de junio de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI" o "tribunal de instancia").[1] Allí, el TPI declaró *No Ha Lugar* la moción de sentencia sumaria presentada por el **Consejo de Titulares**, por lo que desestimó, tanto la solicitud de *injunction* preliminar y permanente, como la **totalidad** de la acción instada por dicha parte.

---

[1] Véase, Entrada Núm. 54 del Sistema Unificado de Manejo y Administración de Casos (en adelante, "SUMAC").

Por los fundamentos que expondremos a continuación, **modificamos** la *Sentencia Parcial* apelada.

**-I-**

El **13 de noviembre de 2023**, el **Consejo de Titulares** instó una *Demanda* en contra de Sylvia Esther Santiago Figueroa (en adelante, "señora Santiago Figueroa") —titular del apartamento 5-A— y CMB Trust —titular del apartamento 5-B—[2] (en conjunto, "las apeladas" o "parte apelada"), sobre Injunction Preliminar e Injunction Permanente.[3] En esta expuso que, como consecuencia de los daños sufridos por el paso del huracán María, el condominio suscribió un contrato de servicios con el Sr. Carlos Sánchez Rosario para la reparación de las verjas. Sin embargo, arguyó que la parte apelada no permitió el acceso al patio de sus respectivos apartamentos y, por ende, no se pudo reparar las verjas que los delimitan. En específico, solicitó que se le permitiera el acceso a los patios ubicados en dichos apartamentos, de modo que se pudiese completar la reparación de las verjas.

El **3 de diciembre de 2024**,[4] se celebró una *Vista de Interdicto Preliminar y Permanente*.[5] A preguntas del tribunal, el representante legal del **Consejo de Titulares** informó que:

> *[e]l asunto que no les permite llegar a un acuerdo es completar el trabajo de instalación de una verja, según el contrato suscrito por la Junta de Directores en junio de 2024, donde se detalla en qu[é] consiste la instalación de la verja, incluyendo una **serpentina de seguridad**. Los únicos dos apartamentos que no han permitido culminar los trabajos son los dos demandados*[.][6]

En cambio, el representante legal de la señora **Santiago Figueroa** señaló que:

> *[n]o es totalmente correcto que no han tenido acceso al apartamento, porque lo han tenido. Informa que la controversia es la **instalación de la serpentina**, ya que la verja fue reparada. Manifiesta que el demandado lo que no permite es la instalación de la serpentina **por no haber sido***

---

[2] Posteriormente enmendado para incluir a Cynthia Michelle Burgos López.
[3] Véase, Entrada Núm. 1 de SUMAC.
[4] *Minuta* de 3 de diciembre de 2024.
[5] Véase, Entrada Núm. 11 de SUMAC.
[6] *Íd.*, a la pág. 3. Énfasis nuestro.

*parte de la verja original, a su vez, tienen dudas de sí eso fue lo aprobado en la asamblea. Solicita ver el acta de la asamblea donde se aprobó la reconstrucción y la instalación de la serpentina[.][7]*

Por su parte, el tribunal de instancia hizo constar que los documentos se referían a la reparación de la verja, y que **se debía evaluar si, antes de la reparación, la verja tenía serpentina**. Agregó que, **si la serpentina era un elemento nuevo, no era parte de la reparación, por lo que, al ser un cambio, podía ser una controversia**.

El **9 de diciembre de 2024**, la señora **Santiago Figueroa** sometió su *Contestación a la Demanda* e incluyó una *Reconvención*.[8] Esta levantó como defensa, entre otras, que para la reconstrucción de las verjas nunca se aprobó o contempló la instalación de rollos de serpentinas encima y entrelazadas en las coronas de los alambres de púas. Arguyó que nunca se opuso a la instalación de la corona de alambres de púas, por lo que permitió la entrada para la reparación de la verja; sin embargo, no permitió la instalación de los rollos de serpentinas. Agregó que entrelazar rollos de serpentinas no era conforme a lo que siempre había existido en ese tipo de verjas dentro del complejo, por ello, no permitió la instalación de serpentinas; a lo que agregó, razones de seguridad y estética. En cuanto a la reconvención, esencialmente adujo que, permitir las serpentinas, la sujetaba a reclamaciones de terceros ante la inminente previsibilidad de daños, según la doctrina del hombre prudente y razonable. Además, arguyó que la acción incoada por el **Consejo de Titulares** era discriminatoria, arbitraria, caprichosa y constitutiva de abuso del derecho al seleccionarla como chivo expiatorio, por lo que eso, no estaba protegido por los postulados de la ley que estos debían implementar. Esta acción generaba daños.

---

[7] *Íd.* Énfasis nuestro.
[8] Véase, Entrada Núm. 13 de SUMAC.

Por lo cual, solicitó se declarara sin lugar la demanda y ha lugar a la reconvención.

El **10 de diciembre de 2024**, el **Consejo de Titulares** sometió una *Moción en cumplimiento de orden*.[9] Adujo que incluyó evidencia de la existencia previa de la serpentina. Por lo cual, **ese mismo día,** radicó una *Moción de desestimación* en contra de la reconvención.[10] Argumentó que procedía la desestimación de la reconvención instada por la señora **Santiago Figueroa**, dado que: **(1)** el tribunal no tenía jurisdicción sobre la materia; **(2)** la reclamación estaba prescrita y; **(3)** la reconvención carecía de alegaciones que justificaran la concesión de algún remedio.

Posteriormente, el **20 de enero de 2025**, el **Consejo de Titulares** presentó una *Moción de sentencia sumaria*.[11] Señaló que los siguientes hechos no estaban en controversia:

1. *El Condominio Pavilion Court está sometido al Régimen de Propiedad Horizontal mediante la Escritura Número 4, "Escritura Matriz de Dedicación al Régimen de Propiedad Horizontal del Condominio Pavilion Court", otorgada el 17 de marzo de 1989 ante la Notaria Delia Castillo de Colorado. (Véase Anejo 1: Págs. 1 – 9).*
2. *El 12 de marzo de 2022, tras haber llegado a un acuerdo extrajudicial con la compañía aseguradora del Condominio en ese momento, el Consejo de Titulares del Condominio Pavilion Court celebró una Asamblea Extraordinaria con el propósito de someter a la consideración del Consejo de Titulares un plan de distribución de fondos para la reconstrucción del Condominio, debido a los daños causados por el huracán María. (Véase Anejo 2: Págs. 1, 3 y 4; y Anejo 3).*
3. *El plan de distribución aprobado por el Consejo de Titulares incluyó la reconstrucción de las verjas interiores y perimetrales del Condominio. (Véase Anejo 3: – Pág. 7).*
4. *La escritura matriz del condominio establece como elementos comunes del Condominio las cercas, muros y verjas que delimitan el perímetro del solar, así como aquellas que se encuentran dentro de los límites del mismo. (Véase Anejo 1: Pág. 5, Párrafo Quinto: D)*
5. *La escritura matriz del condominio establece que el mantenimiento de todas las verjas, incluidas las que*

---

[9] Véase, Entrada Núm. 16 de SUMAC.
[10] Véase, Entrada Núm. 17 de SUMAC.
[11] Véase, Entrada Núm. 24 de SUMAC.

*separan los patios individuales, estará a cargo del Condominio. (Véase Anejo 4: cláusula vigésimo cuarta).*

6. *La escritura matriz del condominio establece como elemento común limitado los patios adyacentes a algunos apartamentos ubicados en la primera planta de los edificios se mencionan en las descripciones de aquellos apartamentos que tienen derecho de uso exclusivo sobre dichos patios. (Véase Anejo 1: Inciso Sexto: D).*

7. *La escritura matriz del Condominio establece que los Apartamentos 5-A y 5-B gozan del uso exclusivo de un patio, el cual es un elemento común limitado y está delimitado por verjas, según surge de los planos de la propiedad. (Véase Anejo 5: Págs. 1 y 2).*

8. *Actualmente, el Condominio se encuentra en el proceso de reparación de las verjas periferales. (Véase Anejo 6: Párrafos 5 y 6; Anejo 7: Párrafo 2).*

9. *A estos fines, el 5 de junio de 2024, el Condominio suscribió un contrato de servicios con el Sr. Carlos Sánchez Rosario para que realizara los trabajos de reparación de las verjas periferales. (Véase Anejo 6 y Anejo 7: Párrafo 2).*

10. *Los trabajos comenzaron en o alrededor del 18 de junio de 2024. (Véase Anejo 7: Párrafo 4).*

11. *Como parte de las labores que ha realizado el Sr. Sánchez Rosario, ha tenido que remover las serpentinas existentes en la verja periferal. (Véase Anejo 7: Párrafo 5).*

12. *Las verjas removidas por el Sr. Sánchez Rosario se encontraban en un avanzado estado de deterioro, y en algunas áreas habían sido completamente destruidas. (Véase Anejo 7: Párrafo 6).*

13. *Los titulares de los Apartamentos 5-A y 5-B rehúsan que se instale la serpentina en las verjas de sus apartamentos. (Véase: Minuta de 6 de diciembre de 2024 y contestación a demanda y reconvención de 9 de diciembre de 2021).*

14. *El Presidente de la Junta de Directores del Condominio Pavilion Court es el Lcdo. Rubén Lucena Quiles. (Véase Anejo 2: Págs. 2 y 4, Anejo 3: Pág. 7 y Anejo 8).*

15. *El 5 de agosto de 2024, el Lcdo. Lucena Quiles dialogó con la codemandada, Sra. Cynthia Burgos, residente del apartamento 5-B del Condominio Pavilion Court. (Véase Anejo 8: Párrafo 2).*

16. *Durante la conversación, el Lcdo. Lucena Quiles explicó a la Sra. Burgos los trabajos de remoción e instalación de la verja periferal del condominio, incluyendo la instalación de la serpentina como parte de dicha verja. (Véase Anejo 8: Párrafo 3).*

17. *Además, el Lcdo. Lucena Quiles mostró a la Sra. Burgos una fotografía tomada desde el patio de su apartamento, en la cual se observa claramente la serpentina. (Véase Anejo 8: Párrafo 4 y Anejo 9).*

18. *El Lcdo. Rubén Lucena Quiles reside en el apartamento 16-B del Condominio Pavilion Court. (Véase Anejo 8: Párrafo 5).*

19. *La descripción registral del apartamento 16-B en la escritura matriz es idéntica a la de los apartamentos 5A y 5-B. (Véase Anejo 8: Párrafo 5 y Anejo 10).*
20. *El Sr. Frank Lamberty Cruz es el Vicepresidente de la Junta de Directores del Condominio Pavilion Court. (Véase Anejo 11).*
21. *El Sr. Lamberty Cruz fue quien elaboró el informe de daños ocasionados por el Huracán María que el condominio presentó ante la aseguradora One Alliance Insurance Company. (Véase Anejo 11: Pág. 1 - Párrafo 2).*
22. *El informe elaborado por el Sr. Lamberty Cruz incluyó una reclamación por los daños a la verja periferal del condominio, que comprende el "Cyclone Fence", el "Bird Wire" y la serpentina. (Véase Anejo 11: Pág. 1 - Párrafo 3, Véase Además: Anejo 11 – Páginas 7 – 11).*
23. *La página 5 del reporte menciona como parte del reporte de daños la serpentina de toda la periferia del condominio. (Véase Anejo 10: Pág. 11 – último párrafo).*
24. *El Sr. Lamberty Cruz tomó fotografías con su teléfono celular, en las cuales se observa claramente la serpentina que forma parte de la verja periferal del Condominio Pavilion Court. (Véase Anejo 11: Pág. 1 - Párrafo 4 y Anejo 12).*

Así, el **Consejo de Titulares** alegó que sometió la evidencia de que, previo a que comenzara la reparación de las verjas, estas ya contaban con serpentinas, por lo cual, no se trataba de un elemento nuevo. Por ello, solicitó se resolviera el caso por la vía sumaria, se ordenara a las **apeladas** cumplir con la Ley de Condominios, y se le permitiera el acceso a los patios ubicados en sus respectivos apartamentos para que se pudieran efectuar las reparaciones aprobadas en la asamblea.[12]

En contraposición, el **10 de febrero de 2025**, la señora **Santiago Figueroa** incoó su *Oposición a la Solicitud de Sentencia Sumaria al Amparo de la Regla 36 (b) de Procedimiento Civil*.[13] Estuvo de acuerdo en que los siguientes hechos presentados por el **Consejo de Titulares** no estaban en controversia:

---

[12] Acompañó junto a su solicitud los siguientes documentos: (1) Escritura Matriz – Folios 1-9; (2) Convocatoria Asamblea Extraordinaria; (3) Minuta Asamblea Extraordinaria; (4) Escritura Matriz – Folios 226-227; (5) Escritura Matriz 72-73; (6) Contrato de Reparación de Verja; (7) Declaración Jurada – Contratista; (8) Declaración Jurada – Pres. Junta de Directores; (9) Foto Tomada por Pres. Junta de Directores; (10) Escritura Matriz – Descripción Apto. 16b; (11) Declaración Jurada – VP Junta de Directores; (12) Fotos Tomadas por VP Junta de Directores.
[13] Véase, Entrada Núm. 28 de SUMAC.

1. El Condominio Pavilion Court está sometido al régimen de propiedad horizontal mediante la Escritura Numero 4 sobre escritura matriz dedicación al régimen de propiedad horizontal del Condominio Pavilion otorgada el 17 de marzo de 1989 ante la notaria Delia Castillo de Colorado.

[…]

3. El plan de distribución aprobado por el Consejo de Titulares incluyo la reconstrucción de las verjas interiores y perimetrales del Condominio. (Anejo 3 pág. 7 del demandante).

4. La Escritura matriz del condominio establece como elementos comunes del condominio las cercas, los muros, y verjas que delimitan el perímetro del solar, así como aquellas que se encuentran dentro de los límites del mismo. (Véase anejo 1; pág. 5 párrafo 5-D).

5. La Escritura matriz del condominio establece[n] que el mantenimiento de todas las verjas, incluidas las que separan los patios individuales, está[n] a cargo del Condominio (véase anejo 4; cl[á]usula 24).

6. La Escritura Matriz del condominio establece como elemento común limitado los patios adyacentes a algunos apartamentos ubicados en la primera planta de los edificios se mencionan en las descripciones de aquellos apartamentos que tienen derecho exclusivo sobre dichos patios. (Véase Anejo 1; inciso 6-D).

7. La Escritura Matriz del condominio establece que los apartamentos 5-A y 5-B gozan del uso exclusivo de un patio, el cual es un elemento común limitado y está delimitado por verjas, según surge de los planos de la propiedad. (Véase Anejo 5; páginas 1 y 2).

8. Actualmente el condominio se encuentra en proceso de reparación de las verjas perimetrales. Véase Anejos 6; párrafo 5 y 6; Anejo 7 párrafo 2.

9. A estos fines, el 5 de junio de 2024, el condominio suscribió un contrato de servicios con el Sr. Carlos S[á]nchez Rosario para que realizara los trabajos de reparación de las verjas perimetrales. Véase Anejos 6 y Anejo 7 párrafo 2.

10. Los trabajos comenzaron en o alrededor del 18 de junio de 2024. (Anejo 7; párrafo 4).

[…]

13. Los titulares de los apartamentos 5-A y 5-B rehúsan que se instale la serpentina en las verjas de sus apartamentos. (Minuta del 6 de diciembre de 2024 y contestación a la demanda y reconvención del 9 de diciembre de 2024).

14. El presidente de la junta de directores del Condominio Pavilion Court es el Lcdo[.] Rub[é]n Lucena Quiles. (Véase Anejo 2; páginas 2 y, Anejo 3; pág. 7. Y Anejo 8).

[…]

19. La descripción registral del apartamento 16-B en la escritura matriz es idéntica a la de los apartamentos 5-A y 5 -B. (Véase Anejo 8; párrafo 5 y Anejo 10).

20. El Sr. Frank Lamberty Cruz es vicepresidente de la Junta de directores del Condominio Pavilion Court. (Véase Anejo 11).

De otro lado, desglosó los siguientes hechos como unos que sí estaban en controversia:

2. *El 12 marzo de 2022, tras haber llegado a un acuerdo extrajudicial con la compañía aseguradora el Consejo de Titulares del Condominio Pavilion Court celebró una Asamblea Extraordinaria con el propósito de someter a la consideración del Consejo de Titulares un plan de distribución para la reconstrucción del Condominio debido a los daños ocasionados por el Huracán Mar[í]a.*

[...]

11. *Como parte de las labores que ha realizado el Sr. S[á]nchez Rosario ha tenido que remover las serpentinas existentes en la verja periferal. (Anejo 7; párrafo 5).*

12. *Las verjas removidas por el Sr. S[á]nchez Rosario se encontraban en un avanzado estado de deterioro y en algunas áreas habían sido completamente destruidas. (Anejo 7; párrafo 6).*

[...]

15. *El 5 de agosto de 2024 el Lcdo. Lucena Quiles dialogo con la con la codemandada Sra. Cynthia Burgos, residente del apartamento 5-B del Condominio Pavilion Court. (Véase Anejo 8; párrafo 2).*

16. *Durante la conversación el Lcdo[.] Lucena Quiles explic[ó] a la Sra. Burgos los trabajos de remoción e instalación de la verja periferal del condómino, incluyendo la instalación de la serpentina como parte de dicha verja. (Véase Anejo 8; párrafo 3).*

17. *Además el Lcdo. Lucena Quiles mostr[ó] una fotografía tomada desde el patio de su apartamento, en la cual se muestra la serpentina. (Véase Anejo 8; párrafo 4 y Anejo 9).*

18. *El Lcdo. Ruben Lucena Quiles reside en el apartamento 16-B del Condominio Pavilion Court. (Véase Anejo 8; párrafo 5).*

[...]

21. *El Sr. Frank Lamberty Cruz fue quien elabor[ó] el informe de daños ocasionados por el Huracán Mar[í]a que el condómino present[ó] ante la Aseguradora One Alliance Insurance Company. (Véase Anejo 11; p[á]gina 1; párrafo 2).*

22. *El informe del Sr. Lamberty Cruz fue quien elabor[ó] el informe de daños ocasionados por el Huracán Mar[í]a que el condómino present[ó] ante la Aseguradora One Alliance Insurance Company. (Véase Anejo 11; p[á]gina 1; párrafo 2).*

23. *La página 5 del reporte menciona como parte del reporte los daños de la serpentina de toda la periferia del condominio. (Véase Anejo 10; p[á]gina 11; último párrafo 2).*

24. *El Sr. Lamberty Cruz tom[ó] fotografías con su teléfono celular, en cuales se observa claramente la serpentina que forma parte de la verja periferal del Condominio Pavilion Court. (Véase Anejo 11; p[á]gina 1, párrafo 4 y Anejo 12).*

La señora **Santiago Figueroa** precisó que las controversias a ser resueltas por el tribunal eran las siguientes:

1. *¿Si la verja de alambre eslabonado instalada al posterior de los patios "gardens" de los codemandados, propietarios de los apartamentos 5-A y 5-B incluían el elemento de una serpentina sobre los angulares de los alambres de púas?*
2. *¿Si al momento del evento del Huracán María, existían las serpentinas en la verja que se pretende reparar de los apartamentos 5-A y 5-B?*
3. *¿Si existe un patrón disconforme entre las distintas verjas del complejo en función a su ubicación, destino y propósito, siendo inexistente la uniformidad en la[s] mismas, cuales tienen distintas dimensiones, materiales de construcción, alturas y elementos de seguridad?*
4. *¿Si la actuación de la Junta es una u[l]travires al no existir un mandato del Consejo de Titulares al incorporar unas serpentinas, cual no eran un elemento de la verja original?*

En fin, arguyó que, ante dichas controversias, y dada las contradicciones de las declaraciones juradas presentadas por las partes, era improcedente la petición de sentencia sumaria.[14]

El **13 de febrero de 2025**, el **Consejo de Titulares** radicó una *Moción Solicitando Enmienda a la Demanda al Amparo de la Regla 22.3 de las de Procedimiento Civil*.[15] Además, incluyeron una *Demanda Enmendada*. Allí, solicitaron que se incluyera a la señora Cynthia Michelle Burgos López (en adelante, "señora Burgos López") como sustituta de CMB Trust.

El **26 de febrero de 2025**, la señora **Santiago Figueroa** sometió su *Contestación a la Demanda Enmendada*.[16] En esencia, levantó las mismas defensas que en la contestación a demanda original.

---

[14] Incluyó junto a su oposición los siguientes documentos: Anejo a [Misiva del 11 de diciembre de 2024]; Anejo B [Misiva del 22 de enero de 2025]; Anejo C [Fotografías]; Anejo D [Fotografías]; Anejo E [Correo electrónico]; Anejo F [Fotografías]; Anejo G [Fotografías]; Anejo H [Declaración Jurada suscrita por la señora Santiago Figueroa]; Anejo I [Declaración Jurada suscrita por el señor Carlos Santiago Figueroa].
[15] Véase, Entrada Núm. 32 de SUMAC.
[16] Véase, Entrada Núm. 36 de SUMAC.

Posteriormente, el **10 de abril de 2025**, la señora **Burgos López** radicó su *Contestación a Demanda y Reconvención*.[17] En síntesis, señaló como defensa que las verjas nunca se contemplaron con la instalación de rollos de serpentinas entrelazadas sobre las coronas de los alambres de púas. Alegó que lo que siempre existió en el condominio eran los alambres de púas, y por razones de seguridad y estética, no permitió la instalación de las serpentinas. Agregó que, en el condominio la mayoría de las verjas no se les había instalado la serpentina, no obstante, en las verjas que se instaló la serpentina eran mucho más altas que la suya —incluyendo la verja de la señora **Santiago Figueroa**—, por lo que, en esas circunstancias, el elemento de riesgo a la seguridad no estaba presente. En cuanto a la reconvención, esencialmente adujo casi lo mismo que la señora **Santiago Figueroa**. Por lo cual, solicitó se declarara sin lugar la demanda y ha lugar a la reconvención.

El **11 de abril de 2025**, el TPI emitió una *Orden* en la cual instruyó al **Consejo de Titulares** poner en condiciones al tribunal de resolver el asunto sin la necesidad de la celebración de un juicio en su fondo.[18]

Así las cosas, el **13 de abril de 2025**, el **Consejo de Titulares** presentó una *Moción para que se dicte Sentencia Sumaria y Solicitud de Honorarios por Temeridad*.[19] Expuso que la señora **Santiago Figueroa**, en su oposición a la solicitud de sentencia sumaria, se apoyó en evidencia que no fue autenticada y, por consiguiente, no controvirtió los hechos medulares del caso. Además, resaltó que la señora **Burgos López** no presentó escrito alguno en oposición a la moción de sentencia sumaria de referencia. Por lo cual, solicitó se diera por sometida la moción de sentencia sumaria presentada el 20

---

[17] Véase, Entrada Núm. 40 de SUMAC.
[18] Véase, Entrada Núm. 41 de SUMAC.
[19] Véase, Entrada Núm. 42 de SUMAC.

de enero de 2025; se resolviera la moción sin la comparecencia de la señora **Burgos López**; se dictara sentencia sumaria a su favor; se le ordenara a la parte apelada permitir el acceso a sus respectivos apartamentos para culminar las reparaciones aprobadas por el **Consejo de Titulares** del condominio; se le ordenara a la parte apelada asumir en parte iguales cualquier costo adicional en el que incurriese el contratista encargado de las reparaciones de la verja y serpentina; e, impusiese individualmente honorarios por temeridad.

A modo de réplica, el **16 de abril de 2025**, la señora **Burgos López** radicó una *Moción Informativa y en Oposición a Moción para que se dicte Sentencia Sumaria y Solicitud de Honorarios por Temeridad.*[20]

El **24 de abril de 2025**, el TPI dictó y notificó una *Orden* en la cual le concedió un término final de cinco (5) días laborables para replicar a la solicitud de sentencia sumaria.[21]

Así las cosas, el **1 de mayo de 2025**, la señora **Santiago Figueroa** sometió una *Moción en Cumplimiento de Orden.*[22] En esta reiteró los argumentos contenidos en su *Oposición a la Solicitud de Sentencia Sumaria al Amparo de la Regla 36 (b) de Procedimiento Civil.*

Ese **mismo día**, la señora **Burgos López** presentó su réplica a la solicitud de sentencia sumaria.*[23]* Indicó estar conforme con los siguientes hechos no controvertidos:

> 1. *"El Condominio Pavilion Court está sometido al régimen de propiedad horizontal mediante la Escritura Número 4 sobre escritura matriz dedicación al régimen de propiedad horizontal del Condominio Pavilion otorgada el 17 de marzo de 1989 ante la notaria Delia Castillo de Colorado. (Véase Anejo 1: Págs. 1 – 9)".*
> [...]
> 3. *"El plan de distribución aprobado por el Consejo de Titulares incluyó la reconstrucción de las verjas*

---

[20] Véase, Entrada Núm. 44 de SUMAC.
[21] Véase, Entrada Núm. 45 de SUMAC.
[22] Véase, Entrada Núm. 46 de SUMAC.
[23] Véase, Entrada Núm. 48 de SUMAC.

*interiores y perimetrales del Condominio. (Refiérase a Anejo 3 pág. 7 del demandante)".*

4. *"La Escritura matriz del condominio establece como elementos comunes del condominio las cercas, los muros, y verjas que delimitan el perímetro del solar, así como aquellas que se encuentran dentro de los límites del mismo. (Véase Anejo 1; pág. 5 párrafo 5-D)".*

5. *"La Escritura matriz del condominio establece que el mantenimiento de todas las verjas, incluidas las que separan los patios individuales, estar a cargo del Condominio (Véase anejo 4; cláusula 24)".*

6. *"La Escritura Matriz del condominio establece como elemento común limitado los patios adyacentes a algunos apartamentos ubicados en la primera planta de los edificios se mencionan en las descripciones de aquellos apartamentos que tienen derecho exclusivo sobre dichos patios. (Véase Anejo 1; inciso 6-D)".*

7. *"La Escritura Matriz del condominio establece que los apartamentos 5-A y 5-B gozan del uso exclusivo de un patio, el cual es un elemento común limitado y está delimitado por verjas, según surge de los planos de la propiedad. (Véase Anejo 5; páginas 1 y 2)".*

8. *"Actualmente el condominio se encuentra en proceso de reparación de las verjas perimetrales. Véase Anejos 6; párrafo 5 y 6; Anejo 7 párrafo 2".*

9. *"A estos fines, el 5 de junio de 2024, el Condominio suscribió un Contrato de Servicios con el Sr. Carlos Sánchez Rosario para que realizara los trabajos de reparación de las verjas perimetrales. Véase Anejos 6 y Anejo 7 párrafo 2".*

10. *"Los trabajos comenzaron en o alrededor del 18 de junio de 2024. (Anejo 7; párrafo 4)".*

[…]

13. *"Los titulares de los apartamentos 5-A y 5-B rehúsan que se instale la serpentina en las verjas de sus apartamentos. (Minuta del 6 de diciembre de 2024 y contestación a la demanda y reconvención del 9 de diciembre de 2024)".*

14. *"El presidente de la junta de directores del Condominio Pavilion Court es el Lcdo. Rubén Lucena Quiles. (Véase Anejo 2; páginas 2 y, Anejo 3; pág. 7. Y Anejo 8)".*

15. *"El 5 de agosto de 2024 el Lcdo. Lucena Quiles dialogó con la codemandada Sra. Cynthia Burgos, residente del apartamento 5-B del Condominio Pavilion Court. (Véase Anejo 8; párrafo 2)".*

16. *"Durante la conversación el Lcdo. Lucena Quiles explicó a la Sra. Burgos los trabajos de remoción e instalación de la verja periferal del condominio, incluyendo la instalación de la serpentina como parte de dicha verja. (Véase Anejo 8; párrafo 3)".*

[…]

18. *"El Lcdo. Rubén Lucena Quiles reside en el apartamento 16-B del Condominio Pavilion Court. (Véase Anejo 8; párrafo 5)".*

19. *"La descripción registral del apartamento 16-B en la escritura matriz es idéntica a la de los apartamentos 5-A y 5-B. (Véase Anejo 8; párrafo 5 y Anejo 10)".*

20. *"El Sr. Frank Lamberty Cruz es vicepresidente de la Junta de directores del Condominio Pavilion Court. (Véase Anejo 11)"*.

De otro lado, arguyó que los siguientes hechos <u>sí estaban en controversia</u>:

2. *"El 12 marzo de 2022, tras haber llegado a un acuerdo extrajudicial con la compañía aseguradora el Consejo de Titulares del Condominio Pavilion Court celebró una Asamblea Extraordinaria con el propósito de someter a la consideración del Consejo de Titulares un plan de distribución para la reconstrucción del Condominio debido a los daños ocasionados por el Huracán María. (Véase Anejo 2: Págs. 1, 3 y 4; y Anejo 3)"*.

[…]

11. *"Como parte de las labores que ha realizado el Sr. Sánchez Rosario ha tenido que remover las serpentinas existentes en la verja periferal. (Anejo 7; párrafo 5)"*.

12. *"Las verjas removidas por el Sr. Sánchez Rosario se encontraban en un avanzado estado de deterioro y en algunas áreas habían sido completamente destruidas. (Anejo 7; párrafo 6)"*.

[…]

17. *"Además el Lcdo. Lucena Quiles mostró una fotografía tomada desde el patio de su apartamento, en la cual se muestra la serpentina. (Véase Anejo 8; párrafo 4 y Anejo 9)"*.

[…]

21. *"El Sr. Frank Lamberty Cruz fue quien elaboró el informe de daños ocasionados por el Huracán María que el condominio presentó ante la Aseguradora One Alliance Insurance Company. (Véase Anejo 11; página 1; párrafo 2)"*.

22. *"El informe elaborado por el Sr. Lamberty Cruz incluyó una reclamación por los daños a la verja periferal del condominio, que comprende el "Cyclone Fence", el "Bird Wire" y la serpentina. (Véase Anejo 11: Pág. 1 - Párrafo 3, Véase Además: Anejo 11 – Páginas 7 – 11)"*.

23. *"La página 5 del reporte menciona como parte del reporte los daños de la serpentina de toda la periferia del condominio. (Véase Anejo 10; página 11; último párrafo 2)"*.

24. *"El Sr. Lamberty Cruz tomó fotografías con su teléfono celular, en las cuales se observa claramente la serpentina que forma parte de la verja periferal del Condominio Pavilion Court. (Véase Anejo 11; p[á]gina 1, párrafo 4 y Anejo 12)"*.

La señora **Burgos López** añadió que en el caso de epígrafe faltaban partes indispensables, tales como los titulares de los apartamentos *gardens* de las torres 3, 4, 5 y 6 del Condominio, así como los titulares de los apartamentos *gardens* en Plaza Antillana, dado que estos también se verían afectados por la instalación de las

serpentinas en la verja de sus patios posteriores. En síntesis, la señora **Burgos López** precisó que las siguientes controversias debían ser resueltas por el tribunal de instancia:

1. *¿Si la verja de alambre eslabonado instalada al posterior de los patios "gardens" de los codemandados, propietarios de los apartamentos 5-A y 5-B, incluían previo al paso del Huracán María el elemento de una serpentina sobre los angulares de los alambres de púas?*

2. *¿Si existe un patrón desigual entre las distintas verjas del complejo en función a su ubicación, destino y propósito, siendo inexistente la uniformidad por sus variadas dimensiones, materiales de construcción, alturas y elementos de seguridad?*

Por lo tanto, solicitó se declarara No Ha lugar la moción de sentencia sumaria presentada por el **Consejo de Titulares** y se resolviera los planteamientos esbozados por la vía ordinaria.[24]

El **25 de junio de 2025**, el TPI dictó la *Sentencia Parcial* apelada.[25] Como parte de su análisis, resolvió que las siguientes determinaciones de hechos <u>no estaban en controversia</u>:

### A. Descripción del Condominio y apartamentos en controversia[26]

1. *El Condominio está sometido al Régimen de Propiedad Horizontal mediante la Escritura Número 4, "Escritura Matriz de Dedicación al Régimen de Propiedad Horizontal del Condominio Pavilion Court", otorgada el 17 de marzo de 1989 ante la Notaria Delia Castillo de Colorado.[27]*

2. *Como elementos comunes generales, la Escritura Matriz del Condominio establece las "[c]ercas, muros y verjas que limitan el perímetro del solar y aquellos que se encuentren dentro de los límites del solar".[28]*

3. *Como elementos comunes limitados, la Escritura Matriz del Condominio incluye "[l]os patios adyacentes a algunos apartamentos localizados en la primera planta de los edificios y los cuales se mencionan en las descripciones de aquellos apartamentos que tienen derecho de uso exclusivo de los mismos".[29]*

---

[24] Acompañó junto a su solicitud los siguientes documentos: Anejo 1 [Fotografía]; Anejo 2 [Fotografía]; Anejo 3 [Declaración jurada sin firma]; Anejo 4 [Fotografía]; Anejo 5 [Fotografía]; Anejo 6 [Fotografía]; Anejo 7 [Fotografía]. En la Entrada Núm. 49 de SUMAC se subsanó el Anejo 3, y se incluyó la Declaración jurada suscrita por la señora Burgos López.

[25] Véase, Entrada Núm. 54 de SUMAC.

[26] Las páginas citadas de los documentos presentados como evidencia se refieren a la numeración del PDF.

[27] Véase Entrada #24 del expediente electrónico, anejo #1 (Escritura Matriz, Folios 1-9), pág. 1.

[28] Íd., pág. 5.

[29] Íd., pág. 6.

4. La Escritura Matriz del Condominio establece que los apartamentos 5-A y 5-B "goza[n] del uso exclusivo de un patio [,] que es elemento común limitado [,] el cual está delimitado por verjas según surge de los planos de la propiedad".[30]

5. En cuanto al mantenimiento, la Escritura Matriz del Condominio dispone expresamente que tal gestión se extenderá a todas las verjas, "incluyendo las que separan los patios individuales", y que "correrá por cuenta del Condominio".[31]

### B. Reparación de las verjas

6. El Vicepresidente de la Junta de Directores del Condominio es el Sr. Frank Lamberty Cruz (en adelante, "Lamberty").[32]

7. El Sr. Lamberty preparó el informe de daños ocasionados al Condominio por el huracán María, el cual fue presentado ante la aseguradora.[33]

8. Dicho informe contempló a modo de reparación, para ciertas torres y áreas del Condominio, los elementos Cyclone Fence, Bird Wire y la serpentina.[34]

9. El 12 de marzo de 2022, se celebró una Asamblea Extraordinaria para evaluar el acuerdo extrajudicial propuesto por la compañía aseguradora del Condominio en relación con los daños del huracán María.[35]

10. Durante la reunión, se sometió a la consideración del Consejo de Titulares un plan de distribución de fondos para la reconstrucción del Condominio.[36]

11. El plan de distribución aprobado por el Consejo de Titulares incluyó la reconstrucción de las verjas interiores y perimetrales del Condominio.[37]

12. El 5 de junio de 2024, el Condominio suscribió un contrato de servicios con el Sr. Carlos Sánchez Rosario para que realizara, entre otros trabajos, "la remoción completa de la verja existente y la instalación de una nueva [. . .]".[38]

13. El mencionado contrato establece la colocación de serpentinas de acero inoxidable "sobre los alambres de púas para aumentar la seguridad".[39]

14. Los trabajos de reparación comenzaron en o alrededor del 18 de junio de 2024.[40]

15. Las titulares de los apartamentos 5-A y 5-B se rehúsan a que se instale la serpentina en las verjas de sus apartamentos.

### C. Diálogo entre las partes

---

[30] Anejo #5 (Escritura Matriz, Folios 72-73), págs. 1-2.
[31] Anejo #4 (Escritura Matriz, Folios 226-227), pág. 2.
[32] Anejo #11 (Declaración Jurada, Frank Lamberty Cruz), pág. 1.
[33] Íd.
[34] Íd., págs. 7-11.
[35] Anejos #2 (Convocatoria) y #3 (Acta).
[36] Íd.
[37] Anejo #2 (Convocatoria), págs. 3-4.; anejo #3 (Acta), pág. 7.
[38] Anejo #6 (Contrato), págs. 1-2.
[39] Íd., pág. 2.
[40] Anejo #7 (Declaración Jurada, Carlos Sánchez Rosario).

16. *El Presidente de la Junta de Directores del Condominio es el Lcdo. Rubén Lucena Quiles (en adelante, "Lcdo. Lucena").[41]*

17. *El Lcdo. Lucena reside en el apartamento 16-B del Condominio.[42]*

18. *Según la Escritura Matriz del Condominio, el apartamento 16-B goza del uso exclusivo de un patio como los apartamentos 5-A y 5-B.[43]*

19. *El 5 de agosto de 2024, el Lcdo. Lucena dialogó con la codemandada Burgos, residente del apartamento 5-B del Condominio.[44]*

20. *Durante la conversación, el Lcdo. Lucena le explicó a la codemandada Burgos los trabajos de remoción e instalación de la verja periferal del Condominio, incluyendo la instalación de una serpentina como parte de dicha verja.[45]*

21. *Además, el Lcdo. Lucena le mostró a la codemandada Burgos una fotografía tomada desde el patio de su apartamento, en la cual se observa claramente la serpentina.[46]*

El tribunal de instancia dirimió que la controversia medular en este caso no versaba sobre el acceso a los apartamentos de las **apeladas**, **sino sobre la instalación de la serpentina**. De este modo, determinó que el remedio interdictal solicitado no procedía dado que:

> ***[e]l Consejo de Titulares no logró demostrar fehacientemente que las verjas de los apartamentos de las codemandadas contaran con una serpentina instalada con anterioridad al evento atmosférico***. *Tanto el acta de la Asamblea Extraordinaria como el plan de distribución de fondos aprobado reflejan únicamente la autorización para la reparación de las verjas*, ***sin que conste disposición alguna que contemple específicamente la instalación de una serpentina como parte de esa medida***.[47]

Así pues, el TPI concluyó que, aun cuando la serpentina formaba parte de ciertas áreas y apartamentos, existían otras áreas en las que no estaba presente. En consecuencia, determinó que la controversia en torno a la instalación de la serpentina constituía una disputa que trascendía la reparación autorizada y, por ende,

---

[41] Anejo #2 (Convocatoria); anejo #3 (Acta); anejo #8 (Declaración Jurada, Rubén Lucena Quiles).

[42] Anejo #8 (Declaración Jurada, Rubén Lucena Quiles).

[43] Anejo #10 (Escritura Matriz, Folio 139).

[44] Anejo #8 (Declaración Jurada, Rubén Lucena Quiles). La codemandada Burgos López admitió que esa conversación tuvo lugar. Véase Entrada #48 del expediente electrónico, pág. 10.

[45] Íd.

[46] Íd.

[47] Véase, pág. 11 de la Entrada Núm. 54 de SUMAC. Énfasis nuestro.

carecía de los elementos necesarios para la expedición del remedio extraordinario solicitado. Por lo cual, declaró *No Ha Lugar* la moción de sentencia sumaria presentada por el **Consejo de Titulares** y desestimó la solicitud de *injunction* preliminar y permanente; incluyendo, la totalidad del caso instado por esta parte.

En desacuerdo, el **10 de julio de 2025**, el **Consejo de Titulares** radicó una *Moción de Reconsideración*.[48] En esencia, expuso que, al denegar su moción de sentencia sumaria, procedía que el tribunal emitiese una resolución en la cual determinase cuáles hechos estaban en controversia, y por ende, remitir el caso a un proceso ordinario. Solicitó que, reconsiderara la sentencia parcial, se adjudicara la misma mediante resolución y se ordenara la continuación de los procedimientos.

El **15 de julio de 2025**, el tribunal de instancia emitió una *Resolución Interlocutoria* en la cual declaró *No Ha Lugar* la moción de reconsideración.[49]

Inconforme, el **12 de agosto de 2025**, el **Consejo de Titulares** instó el *Recurso de Apelación* que nos ocupa y señaló la comisión de los siguientes errores:

1. *Erró el TPI al desestimar la acción al amparo de la Ley 129-2020 en lugar de emitir una resolución interlocutoria ordenando procesos ulteriores, según dispone la Regla 36.4 de las de Procedimiento Civil.*
2. *Erró el TPI al desestimar la acción al amparo de la Ley 129-2020 sin que las apeladas hayan presentado ninguna moción dispositiva al amparo de la Regla 36.2 de las Reglas de Procedimiento Civil.*
3. *Erró el TPI al desestimar la acción al amparo de la Ley 129-2020 cuando de las determinaciones de hecho surge la procedencia del remedio que se solicita en la demanda.*

El **19 de agosto de 2025**, concedimos un plazo de treinta (30) días a la parte apelada para presentar su alegato.[50] Por lo que, el **15**

---

[48] Véase, Entrada Núm. 57 de SUMAC.
[49] Véase, Entrada Núm. 59 de SUMAC.
[50] Notificado el 19 de agosto de 2025.

**de septiembre de 2025**, radicaron su *Alegato en Oposición a Recurso de Apelación*.

Así pues, el **16 de septiembre de 2025**, dimos por perfeccionado el recurso para la consideración del Panel.

-II-

-A-

Estamos consciente que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[51]

La citada norma de deferencia también es aplicable a las *decisiones discrecionales* de los tribunales de instancia. En cuanto a este particular, nuestro Alto Foro ha expresado lo siguiente:

> *No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último **(1)** actuó con prejuicio o parcialidad, **(2)** incurrió en un craso abuso de discreción, o **(3)** se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[52]*

Lo importante al momento de ejercer la función revisora es determinar cuándo un tribunal ha abusado de su discreción, ello, no constituye una tarea fácil.[53]

Por lo tanto, para realizarla adecuadamente nuestro Tribunal Supremo nos ha indicado que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad.[54]

-B-

El mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una

---

[51] *Coop. Seguros Múltiples de PR v. Lugo*, 136 DPR 203, 208 (1994).
[52] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[53] *Íd.*
[54] *Íd.*

controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo.[55] Al respecto, es la Regla 36 de Procedimiento Civil la que regula el proceso mediante el cual cualquiera de las partes en un pleito puede solicitar al tribunal que dicte sentencia sumaria a su favor.[56] Así, cuando cualquier parte reclamante solicite que el pleito sea resuelto por la vía sumaria, deberá demostrar en su solicitud, *"la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación".*[57]

De modo que el criterio rector al momento de considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales y pertinentes, según alegados por las partes en sus respectivas solicitudes y/u oposiciones, y que sólo reste aplicar el derecho.[58] Los jueces no están limitados por los hechos o documentos evidenciarlos que se aduzcan en la solicitud de sentencia sumaria. Deben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan *admisiones* hechas por las partes.[59] La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada solo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor.[60]

Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria.[61] Quiere decir que, en ausencia de una controversia de hechos

---

[55] *Rodríguez García v. UCA*, 200 DPR 929 (2018).
[56] Reglas de Procedimiento Civil de 2009, 32 LPRA Ap. V., R. 36.
[57] 32 LPRA Ap. V. R. 36.1 y 36.2.
[58] *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 661 (2017).
[59] *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).
[60] *Velázquez Ortiz v. Mun. de Humacao, supra.*
[61] *Íd.*

materiales discernible, corresponderá a los tribunales aplicar el derecho y resolver conforme al mismo.[62]

En cambio, el TPI no deberá dictar sentencia sumaria cuando: **(1)** existen hechos materiales controvertidos; **(2)** hay alegaciones afirmativas en la demanda que no han sido refutadas; **(3)** surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; y **(4)** como cuestión de derecho no procede.[63]

Por otra parte, es menester señalar que al ejercer nuestra función revisora sobre decisiones en las que se aprueba o deniega una solicitud de sentencia sumaria, nos encontramos en la misma posición que los foros de primera instancia.[64] Siendo la revisión una de *novo*, debemos ceñirnos a los mismos criterios y reglas que nuestro ordenamiento les impone a estos, y debemos constatar que los escritos de las partes cumplan con los requisitos codificados en la Regla 36 de Procedimiento Civil, *supra*.[65] A tenor con lo expuesto, el Tribunal Supremo de Puerto Rico, ha pautado lo siguiente:

> *[E]l Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. […].*
> *[Por el contrario], de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[66]*

Desde luego, el alcance de nuestra función apelativa al intervenir en estos casos no comprenderá la consideración de prueba que no fue presentada ante el foro de primera instancia, ni la adjudicación de hechos materiales en controversia.[67]

---

[62] *Rodríguez García v. UCA, supra.*
[63] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC,* 208 DPR 310, 335 (2021).
[64] *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019).
[65] *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).
[66] *Íd.,* págs. 118-119.
[67] *Íd.*

**-C-**

El *injunction* está regulado por la Regla 57 de Procedimiento Civil y por los Artículos 675 a 689 del Código de Enjuiciamiento Civil.[68] El Artículo 675 del Código de Enjuiciamiento Civil define el *injunction* como un mandamiento judicial expedido por escrito, bajo el sello del TPI, mediante el cual se le requiere a una persona que se abstenga de hacer, o permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra.[69]

Por ser un recurso extraordinario, los tribunales solo pueden expedir un interdicto, entredicho o *injunction*, cuando **no exista** otro remedio jurídico adecuado.[70] A esos efectos, bajo el caso de *Municipio de Loíza v. Sucs. Suárez,*[71] se repasa los criterios a considerarse para expedir un interdicto, a saber: **(1)** naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction;* **(2)** irreparabilidad o existencia de un remedio adecuado en ley; **(3)** probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; **(4)** probabilidad de que la causa se torne en académica de no concederse el *injunction*; y **(5)** máxime, posible impacto sobre el interés público del remedio solicitado.[72]

Ahora bien, para conceder un *injunction* es preciso determinar lo que constituye un remedio apropiado en ley y, por ende, daño irreparable, lo cual dependerá de los hechos y las circunstancias de cada caso en particular.[73] Al respecto, constituye un daño irreparable aquél que no puede ser adecuadamente satisfecho

---

[68] 32 LPRA Ap. V, R. 57 y 32 LPRA secs. 3521-3566, respectivamente.
[69] 32 LPRA sec. 3521.
[70] *ELA v. Asoc. de Auditores*, 147 DPR 669, 679 (1999).
[71] 154 DPR 333, 367 (2001). Véase, además, *Asoc. Vec. v. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 319 (2008); *VDE Corporation v. F & R Contractors*, 180 DPR 21, 41 (2010).
[72] *Íd.* Véase, también, *Pérez Vda. Muñiz v. Criado*, 151 DPR 355, 372-373 (2000).
[73] *Aut. Tierras v. Moreno & Ruiz Dev.* Corp., 174 DPR 409 (2008).

mediante la utilización de los remedios legales disponibles. El daño irreparable se relaciona con la existencia o ausencia de algún otro remedio adecuado en ley que evite la expedición del *injunction*. En este contexto, cuando se hable de un daño irreparable, no quiere decir que el mismo esté fuera de la posibilidad de ser reparado o de ser compensado en una acción de daños y perjuicios, sino que ha de ser de tan constante y frecuente repetición que no pueda obtenerse ningún remedio adecuado o razonable para el mismo en una corte que administra justicia de acuerdo con la ley.[74] Por consiguiente, *mientras exista algún remedio eficaz, completo y adecuado en ley, no se considerará el daño como irreparable, por lo que no procederá conceder el injunction.*[75]

Resulta pertinente recalcar que, el criterio de daño irreparable puede ser considerado como uno de los más importantes para la expedición del *injunction* preliminar.[76] Esto se debe a que este remedio permite al tribunal preservar la efectividad de un dictamen judicial final y asegura que el remedio final sea eficaz.[77] En este sentido, se ha expresado que *"el tribunal debe prevenir aquel tipo de daño que no se puede remediar en una etapa posterior del litigio"*.[78]

De ordinario, no se concederá un *injunction* preliminar si el promovente tiene remedios alternos en la forma de daños u otro remedio.[79] Esto se debe a que, de prevalecer el promovente, una determinación de daños sería un remedio adecuado para compensar cualquier pérdida monetaria.[80] No obstante, en casos extraordinarios, como lo sería el riesgo de que el promovente advenga insolvente antes de concluido el pleito,[81] la reclamación de

---

[74] *Loíza Sugar Co. v. Hernáiz y Albandoz*, 32 DPR 903 (1924).
[75] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra.*
[76] 11A *C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure* sec. 2948.1 (2021) (disponible en Westlaw).
[77] *Asoc. Vec. v. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 325 (2008).
[78] *Íd.*
[79] *Wright, Miller and Kane, supra.*
[80] *Íd.*
[81] Véase, *Mun. de Ponce v. Gobernador*, 136 DPR 776, 785-786 (1994).

daños económicos puede equivaler a un daño irreparable, necesario para la concesión de un *injunction* preliminar.[82]

Al amparo de la Regla 57 de Procedimiento Civil existen tres tipos de interdictos: entredicho provisional, *injunction* preliminar e *injunction* permanente. El promovente de un interdicto, tiene el peso de probar su procedencia.[83] En ese sentido, la Regla 57.3 de Procedimiento Civil enumera los criterios para expedir una orden de entredicho provisional o *injunction* preliminar.[84] El interdicto o *injunction* permanente requiere que se celebre una vista de la cual se derivará su sentencia.[85] Así, el TPI deberá ejercer cuidadosa discreción al expedir el interdicto, considerando los precitados criterios y factores, en particular, el impacto sobre el interés público.

Las consideraciones anteriormente puntualizadas invisten al TPI de discreción en el modo y la concesión del *injunction*. El interdicto deberá expedirse *"con sobriedad y solo ante una demostración de clara e intensa violación de un derecho"*, así como con discreción, ejercitando el foro judicial *"una rigurosa y cuidadosa ponderación de los intereses de todas las partes antes de conceder el remedio".[86]*

Nuestro Tribunal Supremo reiteró que, *"[t]odos los requisitos anteriores, tanto los promulgados por la jurisprudencia como los enumerados en las Reglas de Procedimiento Civil, no son requisitos absolutos, sino directrices que dirigen al tribunal al momento de*

---

[82] *Wright, Miller and Kane, supra.*
[83] *PR Telephone Co. v. Tribunal Superior,*103 DPR 200, 202 (1975).
[84] La referida Regla provee:
> *Al decidir si expide una orden de entredicho provisional o injunction preliminar, el tribunal deberá considerar, entre otros, los siguientes:*
> *(a) La naturaleza del daño a que está expuesto la parte peticionaria;*
> *(b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;*
> *(c) la probabilidad de que la parte promovente prevalezca;*
> *(d) la probabilidad de que la causa se torne en académica;*
> *(e) el impacto sobre el interés público del remedio que se solicita, y*
> *(f) la diligencia y la buena fe con que ha obrado la parte peticionaria.*
> 32 LPRA Ap. V., R. 57.3.
[85] *Mun. de Ponce v. Gobernador,* 136 DPR 776 (1994); *Noriega Rodríguez v. Hernández Colón,* 130 DPR 919 (1992).
[86] *García v. World Wide Entmt. Co.,* 132 DPR 378, 389-390 (1992).

*decidir si la evidencia presentada justifica la expedición del recurso. La concesión del remedio descansará en la sana discreción judicial, que se ejercerá al considerar tanto los intereses como las necesidades de las partes involucradas en el caso".*[87] Así, al ponderar si expedir o no un interdicto, provisional, preliminar o permanente, el TPI deberá examinar los intereses y las necesidades de las partes involucradas y los propósitos de la legislación de que se trate el caso, así como dirimir la prueba sometida ante sí.[88]

**-III-**

En esencia, el **Consejo de Titulares** nos plantea que el TPI incidió al desestimar la causa de acción: **(1)** en lugar de emitir una resolución interlocutoria ordenando procesos ulteriores; **(2)** sin que las apeladas hayan presentado alguna moción dispositiva al amparo de la Regla 36.2 de Procedimiento Civil; y, **(3)** cuando de las determinaciones de hechos, surge la procedencia del remedio que se solicita. Por estar íntimamente relacionados los errores señalados, procederemos a discutirlos en conjunto.

Surge de los autos, que el **Consejo de Titulares** radicó una demanda de interdicto preliminar y permanente al amparo de los Arts. 675 y 676 del Código de Enjuiciamiento Civil, en la que solicitó se le ordenara a las **apeladas** a permitir el acceso al patio de sus apartamentos para la reparación de las verjas del condominio e instalación de serpentinas que fueron afectadas por el paso del huracán María.

En ánimo de precisar la controversia, en la *Vista de Interdicto preliminar y permanente* el tribunal de instancia esbozó que: *"los documentos hablan de la reparación de la verja, por lo que se debe evaluar si antes de la reparación la verja tenía la serpentina. Si la*

---

[87] *Next Step Medical v. Bromedicon*, 190 DPR 474, 487 (2014); *Mun. de Ponce v. Gobernador, supra,* págs. 790–791.
[88] *Next Step Medical v. Bromedicon, supra.*

*serpentina es un elemento nuevo no es parte de una reparación, por lo que, al ser un cambio, puede ser una controversia."*[89]

Así, el **Consejo de Titulares** radicó una moción de sentencia sumaria en la cual alegó que, previo a la reparación de las verjas, estas ya contaban con la serpentina, por lo que al no tratarse de un elemento nuevo, procedía se dictara sentencia sumariamente. Reiteró su posición en cuanto a que se les permitiera el acceso a los patios de las apeladas.

En respuesta, las **apeladas** presentaron sendas oposiciones a que se dictara sentencia sumaria. Aunque aceptaron que algunos hechos no estaban en controversia, indicaron que existía controversia de hechos en cuanto a la existencia de las serpentinas en las propiedades de estas, por lo que arguyeron la imposibilidad de dictar la sentencia sumaria en favor de la **parte apelante**.

Atendidas las mociones, el tribunal de instancia dictó la *Sentencia Parcial* apelada, y declaró *No Ha Lugar* la moción de sentencia sumaria presentada por el **Consejo de Titulares**. En específico, al atender la controversia medular sobre la existencia de las serpentinas, resolvió que la **parte apelante** no pudo demostrar —en la moción de sentencia sumaria— que las mismas estaban instaladas en la propiedad de las **apeladas** previo al huracán María, por lo que ordenó la desestimación total de la demanda presentada por el **Consejo de Titulares**.

De este modo, nos corresponde determinar si actuó correctamente el tribunal de instancia al desestimar la referida acción de *injunction* preliminar y permanente; y toda la demanda, vía sentencia sumaria. Veamos.

**Primeramente**, por estar en igual posición que el TPI, nos compete —como foro intermedio— determinar *de novo* si las partes

---

[89] Véase, Entrada Núm. 11 de SUMAC, pág. 4.

cumplieron con los requisitos que impone la referida Regla 36 de Procedimiento Civil. Un análisis de ambas solicitudes nos lleva a concluir que el **Consejo de Titulares** y las **apeladas** cumplieron con todos los trámites procesales correspondientes de la sentencia sumaria. Es decir, ambas partes enumeraron los hechos esenciales y pertinentes, y sostuvieron sus alegaciones al unir junto a ellas declaraciones juradas y otros documentos admisibles en evidencia.

Por consiguiente, procedemos a adoptar por referencia las primeras veinte (20) determinaciones de hechos que hizo el tribunal de instancia en la *Sentencia Parcial* apelada.[90]

**En segundo orden** y a tono con los documentos que obran en el expediente, coincidimos con el TPI en cuanto a que el **Consejo de Titulares** falló en establecer —**en su moción de sentencia sumaria**— que previo al huracán María las verjas de los apartamentos de las **apeladas** contaban con una serpentina instalada. Dado lo anterior, estamos impedidos de conceder el *injunction* solicitado, y en consecuencia, otorgar el acceso al patio de la **parte apelada** para la instalación de dichas serpentinas.

No obstante, el **Consejo de Titulares** arguye que el TPI erró al no ordenar la celebración de un juicio ordinario para dilucidar la controversia de hechos sobre las referidas serpentinas. **Tiene razón**.

Nótese, que en la *Sentencia Parcial* apelada el TPI resolvió lo siguiente:

> *[e]l Consejo de Titulares no logró demostrar fehacientemente que las verjas de los apartamentos de las codemandadas contaran con una serpentina instalada con anterioridad al evento atmosférico. <u>Tanto el acta de la Asamblea Extraordinaria como el plan de distribución de fondos aprobado reflejan únicamente la autorización para la reparación de las verjas, sin que conste disposición alguna que contemple específicamente la instalación de una serpentina como parte de esa medida.</u>[91]*

---

[90] La determinación de hecho núm. 21 no la adoptamos, puesto que se desprende de la declaración jurada del 14 de enero de 2025, prestada por el presidente de la junta de directores, el Lcdo. Lucena Quiles; que, a su vez, está controvertida con la declaración jurada del 1 de mayo de 2025, prestada por la señora Burgos López. Véase, las ENTRADAS NÚM. 24 y NÚM. 48 de SUMAC.
[91] Véase, pág. 11 de la Entrada Núm. 54 de SUMAC. Énfasis nuestro.

Es decir, la única controversia a resolver consiste en, **si previo al huracán María, las verjas de los apartamentos de las apeladas contaban con una serpentina instalada**. Ese hecho medular no fue resuelto cuando el tribunal expresa que —de la prueba documental (fotos, declaraciones juradas, informe del Sr. Lamberty Cruz, contrato de construcción y acta de la asamblea extraordinaria, plan de distribución de fondos, entre otros) presentada con la moción de sentencia sumaria— el **Consejo de Titulares** no demostró que dichas serpentinas estaban instaladas, previo al evento atmosférico, en específico, las verjas de las apeladas.

En virtud de lo anterior, somos del criterio de que el TPI erró al desestimar la totalidad de demanda y no permitir que dicha controversia de hechos continuara dilucidándose en un juicio ordinario. Por lo tanto, la controversia de hecho a resolverse en un juicio ordinario es la siguiente:

> *¿Si antes del evento del Huracán María, existían las serpentinas en las verjas de las apeladas en los apartamentos 5-A y 5-B?*

En consecuencia, procedemos a **modificar** la *Sentencia Parcial* apelada para que la acción continúe en un juicio ordinario sobre la controversia de hechos antes dicha, conforme a los hechos no controvertidos y adoptados en esta sentencia. Por lo cual, se ordena la continuación del caso para que se celebre juicio sobre las causas pendientes; así, se **confirma** el resto de la determinación apelada.

**-IV-**

Por los fundamentos antes expuestos, se **modifica** la *Sentencia Parcial* apelada para la continuación de este caso conforme a lo aquí ordenado. Así, se **confirma** el resto del dictamen apelado.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones